WARREN LEX LLP
Matthew S. Warren (State Bar No. 230565)
Patrick M. Shields (State Bar No. 204739)
Erika H. Warren (State Bar No. 295570)
18-2353@cases.warrenlex.com
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile

Attorneys for Plaintiffs DealDash Oyj and DealDash Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEALDASH OYJ and DEALDASH INC.<br>　　　Plaintiffs,<br><br>v.<br><br>CONTEXTLOGIC INC. d/b/a WISH<br>　　　Defendant. | ) Case No. 3:18-cv-02353<br>)<br>) **COMPLAINT FOR TRADEMARK**<br>) **INFRINGEMENT, UNFAIR COMPETITION,**<br>) **DILUTION, FALSE ADVERTISING,**<br>) **UNLAWFUL BUSINESS PRACTICES,**<br>) **AND ACCOUNTING**<br>)<br>)<br>) **DEMAND FOR JURY TRIAL**<br>) |

## NATURE OF THE ACTION

1. This is an action by the true DealDash against a counterfeit one. Founded by a young entrepreneur in 2009, DealDash has operated an online and mobile shopping platform known as the home of "fair and honest auctions." DealDash revolutionized the shopping experience by providing users with a fast-paced, gamified shopping experience. DealDash is today the longest-running penny auction site in the United States, with over thirteen million registered users.

2. Recently, DealDash learned that a competing site has been trading on its name. Defendant ContextLogic d/b/a/ Wish added a "Deal Dash" game to its own site in order to drive DealDash's customers to its own shopping platform. Defendant's "Deal Dash" is no subtle ode: in addition to copying the registered "DealDash" service mark, it uses the same gamified shopping concept and the same color scheme to sell, in many cases, the exact same products as the true DealDash. Unlike the true DealDash, however, Wish customers report that many products ordered on the fake "Deal Dash" often arrive only after long delays, or not at all; or they turn out to be cheap counterfeits from China.

3. These and other problems at Wish have led to numerous customer complaints and negative reviews. Unfortunately, several of these complaints have been misdirected to the real DealDash, by consumers who—misled by the counterfeit "Deal Dash" mark—believe the two companies are affiliated. Wish's misuse of DealDash's registered service mark is thus causing real, ongoing harm to DealDash's business and reputation.

4. DealDash accordingly brings this action for trademark infringement, dilution, and unfair competition under the Lanham Act, and trademark infringement, false advertising, and deceptive and unfair business practices under California law.

## PARTIES

5. Plaintiff DealDash Oyj is a Finnish corporation based in Helsinki, Finland. Plaintiff DealDash Inc. is a Delaware corporation with its principal place of business located at 12805 Highway 55, Suite 205, in Plymouth, Minnesota. The DealDash plaintiffs operate one of the most successful and well-known penny auction shopping websites and mobile applications in the United States.

6. On information and belief, defendant ContextLogic Inc. d/b/a Wish is a Delaware corporation with its principal place of business at 1 Sansome Street, 40th Floor in San Francisco,

California.  On information and belief, the defendant operates a competing shopping website, Wish.com, as well as mobile applications.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1338 and 15 U.S.C. § 1121.  This Court has supplemental subject matter jurisdiction over California state claims under 28 U.S.C. § 1367(a).

8. This Court has personal jurisdiction over ContextLogic Inc., which is based in San Francisco, California.  Venue is proper in this District under 28 U.S.C. § 1391 because the defendant resides in this District and a substantial part of the acts or omissions giving rise to this complaint occurred in this district.

## BACKGROUND

### The DealDash Plaintiffs

9. Plaintiffs DealDash Oyj and DealDash, Inc. (collectively "DealDash") operate one of the most successful and well-known auction websites in the United States, DealDash.com.

10. DealDash was founded in 2009 by 16-year-old entrepreneur William Wolfram.  In 2013, Mr. Wolfram won the Ernst & Young Entrepreneur of the Year Award and was the youngest national winner to compete for the World Entrepreneur of the Year.  DealDash distinguishes itself from other auction sites by offering a "gamified" buying experience incorporating familiar game mechanics like a countdown timer, progress bars, and avatars to increase customer engagement and generate substantial repeat business.

11. DealDash offers what are generally known as "penny auctions," in which the price of each item starts at just one cent, and rises by one cent with each additional bid.  After each bid, shoppers have ten seconds to place an additional bid, paying a small "bid fee" to do so.  When ten seconds elapse without a new bid, the last bidder wins the auction and can purchase the product for the penny-incremented price. Bidding requires strategy to win auctions for the lowest possible total cost of item price plus bid fees. DealDash thus turns shopping into a game, in which each shopper competes to purchase the most items for the least money.

12. Whereas in a traditional penny auction, non-winning bidders get nothing, DealDash allows

all shoppers who bid on an item to purchase it at the "buy it now" price—and, if they do so, they receive credits back for their bid fees, to reuse in future auctions.  By giving shoppers the "buy it now" option, according to a 2012 article in The Huffington Post, "DealDash became known as the fair and honest, risk-free alternative to penny auctions."  Laila Escartín-Sorjonen, "DealDash—Turning Shopping Into a Game," The Huffington Post, June 18, 2012.

13. DealDash prides itself on excellent customer service, which it considers a key aspect of its business.  DealDash provides 24/7 customer support via email, live chat, and telephone.  DealDash has earned an A+ rating from the Better Business Bureau based on over 200 customer reviews, and numerous customers have reported positive experiences with DealDash's stellar customer service team.

14. Today, DealDash has over 13 million registered shoppers in the United States, and substantial brand recognition under its registered service mark "DealDash."

### The DealDash Mark

15. DealDash has used its service mark in commerce since April 2010.

16. On June 19, 2010, DealDash filed a standard character mark for the word "DealDash" with the United States Patent and Trademark Office.  The PTO published this mark for opposition on November 10, 2010, and, on February 1, 2011, registered it as No. 3914068 for "online retail store services featuring a wide variety of consumer goods of others."  A copy of Registration No. 3914068 is attached as Exhibit 1.  The registration became incontestable on August 1, 2017.  The registered "DealDash" mark is owned by plaintiff DealDash Oyj as shown in Exhibit 2.  According to the PTO's TESS system, DealDash holds the only live trademark using both "Deal" and "Dash."  Ex. 3.

17. DealDash commonly uses its Deal Dash mark in a gold-and-light-yellow color combination as follows:



18. DealDash has also introduced a later version of its logo, keeping the gold-and-light-yellow color scheme:

![DealDash]

19. The gold-and-light-yellow colors also appear on the DealDash website and app, including on the "Bid Now" button, and are heavily featured in DealDash advertisements and marketing materials:




20. In 2013, the DealDash mobile application and its television advertising also added blue to the color scheme:




21. The DealDash mobile app icon is similarly blue, with a gold-and-light-yellow letter "D":



22. Since its launch, DealDash has spent tens of millions of dollars on branding and advertising over digital and social media, and national television ads. As a result of these efforts, DealDash's mark and trade dress are widely recognized by consumers.

### Wish's Counterfeit "Deal Dash"

23. Defendant ContextLogic, Inc. d/b/a Wish ("Wish") operates a competing online shopping forum called Wish. On information and belief, Wish began in 2011 as a wishlist app that allowed users to save a list of their most-wanted products, and eventually began a shopping platform to sell products directly to consumers from primarily Chinese manufacturers.

24. On information and belief, in 2015, Wish introduced its own gamified shopping experience called "Deal Dash." Wish's "Deal Dash" is a shopping game that uses a countdown timer, animations, and other gaming elements to create a sense of urgency and excitement. It presents this feature on a screen that announces "Welcome to Deal Dash" in colors that look strikingly like those of the genuine DealDash logo.

25. Wish's website and mobile applications advertise the "Deal Dash" feature using DealDash's traditional blue, yellow and gold colors in addition to its service mark:



26. On information and belief, Wish uses targeted advertising including keywords to direct consumers searching for DealDash to its infringing "Deal Dash" game.

27. According to its designer, "Deal Dash is a feature within Wish that gamifies the shopping experience by allowing shoppers to play and redeem rewards as they shop." Ex. 4.

28. To play Wish's "Deal Dash" game, a shopper spins the spinner, which unlocks the indicated number of discounted products. The shopper then gets a timed shopping spree where they can buy these discounted products. The time remaining in the shopping spree is displayed as a countdown timer; the minutes remaining appear in a banner using the gold and blue scheme:



29. On information and belief, Wish's appropriation of the DealDash service mark was successful: the "Deal Dash" game greatly increased Wish's sales and customer retention. Wish has now grown to be one of the largest e-commerce sites in the world, claiming over 300 million users worldwide.

## Wish's Customers Complain

30. Wish has received thousands of customer complaints about merchandise they purchased on its platform. Shoppers complain that items they purchased on Wish are never delivered, and their money never refunded. Shoppers also complain that Wish merchandise is of poor quality and the items received often differ from the images on Wish's website. Other Wish customers complain that they became victims of credit card scams by using the Wish site.

31. Still others complain about Wish's poor customer service, and specifically customers'

inability to connect with a live representative; instead, Wish sends consumer calls to automated phone messages, and spits out "stock" email replies to written support requests. "I sent many complaints through their app and even called them, but only got a voice mail saying to message them through the app."[1] "I wish you had live people at customer service instead of a voice mail."[2] "I have emailed the address they provided. Nothing. I put a message on Facebook. Nothing. I have laid a complaint. Nothing. I don't know what else to do."[3] "The order was debited from my credit card and I have still not received or feedback despite sending many mails. I cannot get through to the so called help line and am beyond frustrated. I feel like I have been robbed."[4]

32.     Wish has over 2,000 reviews and a two-star rating on the consumer review site "pissedconsumer.com." Shoppers bemoan the poor quality merchandise they receive from Wish, if and when they receive anything for their money. For example, a reviewer recently posted:

> I ordered many items, much if not all for Christmas for my kids. Ordered plenty early I thought, considering it was the 1st of November, 4 items STILL not here, yet are paid for.
>
> They want me to send a picture of the items so they can investigate, what? How can I send a picture of what I don't have and why, they have my order # and can see what I ordered. Other items were damaged and I asked for a replacement, again more pictures wanted.[5]

---

[1] "Wish.com / I received my tv completely damaged," Complaints Board, https://www.complaintsboard.com/complaints/wishcom-i-received-my-tv-completely-damaged-c983220.html (last visited April 17, 2018).

[2] "Wish.com / I did not get some of my orders..," Complaints Board, https://www.complaintsboard.com/complaints/wishcom-i-did-not-get-some-of-my-orders-c983141.html (last visited April 17, 2018).

[3] "Wish.com / payment taken, goods not received," Complaints Board, https://www.complaintsboard.com/complaints/wishcom-payment-taken-goods-not-received-c977129.html (last visited April 17, 2018).

[4] "I placed an order in Oct 17, now 28/2/18. Still not received," Pissed Consumer, https://wish.pissedconsumer.com/i-placed-an-order-in-oct-17-now-28-2-18-still-not-received-2018022811 99739.html (last visited April 17, 2018).

[5] "Wish is a nightmare!!" Pissed Consumer, https://wish.pissedconsumer.com/wish-is-a-nightmare-201802181192697.html (last visited April 17, 2018).

Other Wish shoppers write similarly. "Every [sic] heard of 'Bait & Switch'? Well that is what Wish.com did with my order."[6] Many say they received empty packages,[7] or that they received only cheap knockoffs of the items they ordered.[8]

33.     A search of the Wish platform reveals that many of the products sold on Wish are not what they seem. When a shopper searches for "Apple Watch," Wish presents dozens of fakes designed to look like the real thing:



Ex. 5. The product above is described using keywords like "Apple" and "IOS" to ensure that it will turn up when shoppers search for a real Apple Watch. This seller also uses a seemingly counterfeit Apple logo in the product image:

---

[6] "Wish - the worst customer support," Pissed Consumer, https://wish.pissedconsumer.com/the-worst-customer-support-201801111166695.html (last visited April 17, 2018).

[7] "Wish - The order that I placed was not in the package I received to," Pissed Consumer, https://www.pissedconsumer.com/browse-reviews.html?query=the+order+that+I+placed+was+not+in+the+package+wish.com+March+29&red= (last visited April 17, 2018); "Wish - An empty package arrived customer service sucks," Pissed Consumer, https://www.pissedconsumer.com/people/velvetywoollymammoth.html (last visited April 17, 2018).

[8] "Mostly Fake or Counterfeit Junk with High Shipping Costs," Sitejabber, https://www.sitejabber.com/reviews/wish.com#4544 (last visited April 17, 2018); "Wish.com / sold fake sd cards and refuse to refund. avoid like the plague!" Complaints Board, https://www.complaintsboard.com/complaints/wishcom-sold-fake-sd-cards-and-refuse-to-refund-avoid-like-the-plague-c976609.html (last visited April 17, 2018); "Wish / no humans work here," Complaints Board, https://www.complaintsboard.com/complaints/wish-no-humans-work-here-c969162.html (last visited April 17, 2018); "Wish - Improperly Displaying Products" Pissed Consumer, https://www.pissedconsumer.com/people/rectangularcrow.html (last visited April 17, 2018).

Ex. 5.  Similar searches for a wide variety of name brand goods show that Wish products are, for the most part, knockoffs.  *See* Exs. 6 ("Fitbit"); 7 ("LEGO Architecture"); and 8 ("Louis Vuitton").  It is thus unsurprising that so many shoppers have pegged Wish products "fake" and the site, overall, a "scam."[9]

34. Many of Wish's customers have also mistakenly directed their complaints to DealDash, thinking the two companies are related.  For example, one customer emailed DealDash customer service saying  "I HAVE WISH AND DEALDASH CONFUSED!  I HAVE CHARGES I CANT JUSTIFY.  PLEASE HELP ME NOW!"  Another customer complained:  "You have a daily spin of which I won some type of cream and a phone.  It said to pay the $4.95 shipping for the cream and then it would go back to order the phone.  I was shocked to see that they placed an order for almost $40 on my debit card and never returned for the phone.  It would not let me contact them again."  But, as DealDash's support staff responded to that customer, DealDash does not have a "daily spin."  In another example, a caller forwarded DealDash an email confirming his order; a representative explained that she'd "received the email and it looks like the email is actually not from Deal Dash.  It is from Wish.com."  The caller replied "Oh, that's not Deal Dash? . . . I thought they were the same."  Most recently, on April 5, a customer called DealDash to inquire about his purchases, saying "I tried to buy something off DealDash but it keeps coming up Wish" and "I don't know what Wish is."

---

[9] "Mostly Fake or Counterfeit Junk with High Shipping Costs," Sitejabber, https://www.sitejabber.com/reviews/wish.com#4544 (last visited April 17, 2018); "Wish.com / sold fake sd cards and refuse to refund. avoid like the plague!" Complaints Board, https://www.complaintsboard.com/complaints/wishcom-sold-fake-sd-cards-and-refuse-to-refund-avoid-like-the-plague-c976609.html (last visited April 17, 2018); "Wish.com / ordering one thing and getting something different," Complaints Board, https://www.complaintsboard.com/complaints/wishcom-ordering-one-thing-and-getting-something-different-c973726.html (last visited April 17, 2018).

## CLAIMS FOR RELIEF

### COUNT I

**(Trademark Infringement Under 15 U.S.C. § 1114)**

35. DealDash realleges and incorporates by reference paragraphs 1 through 34, inclusive, as though fully set forth in this paragraph.

36. DealDash owns the federal trademark Registration No. 3914068 for the valid and protectable "DealDash" service mark.

37. DealDash's service mark "DealDash" is inherently distinctive and therefore entitled to trademark protection. In addition, the "DealDash" mark has acquired secondary meaning in the minds of consumers through DealDash's extensive advertising, goodwill, and use of the mark in commerce.

38. DealDash uses the trade name "DealDash" in connection with its shopping platform.

39. Wish has used and uses a counterfeit mark "Deal Dash" in commerce on its competing shopping platform.

40. Wish's use of counterfeit "Deal Dash" mark is likely to confuse consumers and in fact has confused consumers as to the origin and quality of its goods as well as an affiliation, connection, or association with DealDash.

41. On information and belief, Wish willfully and intentionally adopted and used a confusingly similar "Deal Dash" mark to trade on DealDash's established goodwill.

42. Wish's unlawful acts have caused and continue to cause irreparable injury to DealDash.

43. The injury to DealDash is and continues to be ongoing and irreparable. An award of monetary damages alone cannot fully compensate DealDash for its injuries and DealDash lacks an adequate remedy at law.

44. Under 15 U.S.C. § 1114, DealDash is entitled to an injunction against Wish, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

### COUNT II

**(False Designation of Origin, False Affiliation, and Unfair Competition Under 15 U.S.C. § 1125(a))**

45. DealDash realleges and incorporates by reference paragraphs 1 through 44, inclusive, as

though fully set forth in this paragraph.

46. DealDash owns the federal trademark Registration No. 3914068 for the valid and protectable "DealDash" service mark.

47. DealDash's service mark "DealDash" is inherently distinctive and therefore entitled to trademark protection. In addition, the "DealDash" mark has acquired secondary meaning in the minds of consumers through DealDash's extensive advertising, goodwill, and use of the mark in commerce.

48. DealDash uses the trade name "DealDash" in connection with its shopping platform.

49. DealDash operates under and makes commercial use of the DealDash mark, and the trade name "DealDash" in connection with its goods and services.

50. Wish's use of the "Deal Dash" name, symbols or devices, and combination of symbols and devices, has been and continues to be in a manner likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of DealDash with Wish, or as to the origin, sponsorship, or approval of Wish's goods, services, or commercial activities.

51. DealDash has not consented to Wish's use of the Deal Dash marks or trade name.

52. Wish's unauthorized use of the Deal Dash marks was and is willful.

53. Wish's acts constitute false statements in connection with products or services distributed in interstate commerce, in violation of 15 U.S.C. § 1125(a).

54. Wish's acts have caused irreparable injury to DealDash's goodwill and reputation. The injury to DealDash continues to be ongoing and irreparable. An award of monetary damages alone cannot fully compensate DealDash for its injuries and DealDash lacks an adequate remedy at law.

55. Under 15 U.S.C. § 1125(a), DealDash is entitled to an injunction against Wish, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

### COUNT III

**(Dilution of a Famous Mark in Violation of the Trademark Dilution Act 15 U.S.C. § 1125(c))**

56. DealDash realleges and incorporates by reference paragraphs 1 through 55, inclusive, as though fully set forth in this paragraph.

57. The DealDash mark is distinctive and famous within the meaning of the Anti-Dilution Act,

15 U.S.C. § 1125(c).

58. Wish began using its counterfeit mark in commerce after the DealDash mark became distinctive and famous.

59. The general public associates the DealDash mark with fair and honest auctions. As a result of Wish's use of the DealDash mark to sell poor quality and often counterfeit goods to consumers, and its failure to address customer complaints, over which DealDash has no control, the distinctive qualities of the DealDash mark are being and will continue to be diluted.

60. Wish's acts have diluted and will continue to result in the dilution of the distinctive nature of the DealDash mark through blurring, in violation of 15 U.S.C. § 1125(c).

61. Wish's false suggestion of association with DealDash have diluted and will continue to dilute the distinctive DealDash mark by tarnishment, in further violation of 15 U.S.C. § 1125(c).

62. Wish's wrongful conduct constitutes an actual threat to the distinctiveness of the DealDash mark that DealDash has expended great efforts to develop and maintain.

63. The distinctive nature of the DealDash mark is of substantial value, and DealDash is suffering and will continue to suffer irreparable harm and blurring of the DealDash mark if Wish's wrongful conduct is allowed to continue.

64. The dilution of the DealDash mark will likely continue unless the Court orders injunctive relief against Wish.

65. DealDash is entitled to an injunction against Wish, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

## COUNT IV

**(Trademark Infringement and Unfair Competition Under California Common Law)**

66. DealDash realleges and incorporates by reference paragraphs 1 through 65, inclusive, as though fully set forth in this paragraph.

67. DealDash owns protectable rights in its mark and the trade name "DealDash" at common law. DealDash has used the "DealDash" mark and trade name in commerce throughout the United States and California.

68. Wish's conduct is likely to cause confusion, mistake, or to deceive as to the source of services offered by Wish, or as to affiliation, connection, association, sponsorship, or approval of such services, and constitutes infringement of the DealDash mark at common law.

69. Wish is infringing the DealDash mark with knowledge and intent to cause confusion, mistake, or deception.

70. Wish's conduct is aggravated by willfulness, wantonness, malice and conscious indifference to the rights and welfare of DealDash, for which California law allows the imposition of exemplary damages.

71. As a direct and proximate result of Wish's activities, DealDash has suffered and will continue to suffer substantial damage unless Wish is enjoined by this Court.

72. Under California common law, DealDash is entitled to injunctive relief and compensatory and punitive damages.

## COUNT V

**(Deceptive, False, and Misleading Advertising Under Calif. Bus. & Prof. Code § 17500 *et seq*.)**

73. DealDash realleges and incorporates by reference paragraphs 1 through 72, inclusive, as though fully set forth in this paragraph.

74. Wish's acts of untrue and intentionally misleading advertising, including affirmative misrepresentations of endorsement by DealDash, as described above, constitute unfair, deceptive, untrue or misleading advertising under California Business and Professions Code § 17500 *et seq*.

75. Wish's purpose was to drive DealDash's customers to its own platform by false affiliation with and misrepresenting the nature of its relationship with DealDash. At the time of its dissemination of misinformation, Wish knew that these statements relating to the nature, characteristics, or qualities or its products or services were untrue and misleading.

76. Wish's knowing misappropriation of the DealDash mark and the "DealDash" trade name also constitutes unfair, deceptive, untrue or misleading advertising under California Business and Professions Code § 17500.

77. Wish's misappropriation of the DealDash mark and the "DealDash" trade name is willful and persistent.

78. DealDash has suffered injury-in-fact as a result of Wish's false advertising in the form of lost sales, lost profits, actual damages, and confusion in the marketplace regarding the nature and quality of the services offered by DealDash.

79. Wish's acts described above have greatly and irreparably damaged DealDash and will continue to damage DealDash unless enjoined by this Court. Accordingly, DealDash is entitled to an injunction under California Business and Professions Code § 17535 as well as any other remedies provided by law.

## COUNT VI

**(Unlawful, Unfair, and Deceptive Business Practices Under Calif. Bus. & Prof. Code § 17200 *et seq.*)**

80. DealDash realleges and incorporates by reference paragraphs 1 through 79, inclusive, as though fully set forth in this paragraph.

81. Wish has engaged in unlawful business acts or practices by committing illegal acts and practices as alleged herein, all in an effort to gain unfair competitive advantage over DealDash.

82. These unlawful business acts or practices were committed in the context of business activity related to the selling of goods to consumers over the internet, including consumers in the same target market as DealDash operates.

83. The acts and conduct of Wish constitute fraudulent, unlawful, and unfair competition as defined by Cal. Bus. & Prof. Code §§ 17200 *et seq*.

84. Wish's conduct constitutes violations of state and federal statutes and codes, including but not limited to, state false advertising laws, including Cal. Bus. & Prof. Code § 17500, trademark infringement pursuant to the Lanham Act, 15 U.S.C. § 1114, and false designation of origin and dilution pursuant to 15 U.S.C. § 1125.

85. Wish has improperly and unlawfully taken commercial advantage of DealDash's investment in its mark and the "DealDash" trade name. In light of Wish's conduct, it would be inequitable to allow Wish to retain the benefit of the funds obtained through the unauthorized and unlawful use of that property.

86. Wish's unfair business practices have unjustly harmed DealDash and are causing DealDash to suffer damages.

87. As a result of this unfair competition, DealDash has also suffered irreparable injury and, unless Wish is enjoined from committing acts of unfair competition, will continue to suffer irreparable injury, whereby DealDash has no adequate remedy at law.

88. Wish's acts described above have greatly and irreparably damaged DealDash and will continue to damage DealDash unless enjoined by this Court. Accordingly, DealDash is entitled to an injunction under California Business and Professions Code § 17535 as well as any other remedies provided by law.

## COUNT VII

### (Accounting)

89. DealDash realleges and incorporates by reference paragraphs 1 through 88, inclusive, as though fully set forth in this paragraph.

90. As set forth above, Wish has been unjustly enriched from its unlawful conduct such that some or all of Wish's profits are owed to DealDash. In addition, DealDash has sustained damages from Wish's infringement.

91. The amount of Wish's wrongful profits are unknown to DealDash and cannot be ascertained without a full accounting of Wish's wrongful and unlawful conduct. An accounting is also necessary to deter Wish, a willful infringer, from further infringement.

92. DealDash is accordingly entitled to a full accounting and records of Wish's unlawful activities.

## **PRAYER FOR RELIEF**

WHEREFORE, the plaintiffs pray for relief as follows:

A judgment that DealDash's service mark has been infringed by Wish in violation of the DealDash's rights under the Lanham Act 15 U.S.C. § 1114, common law, and California law;

A judgment that Wish has competed unfairly with DealDash in violation of DealDash's rights under 15 U.S.C. § 1125(a), common law, and California law;

A judgment that Wish's activities are likely to dilute DealDash's famous mark in violation of 15 U.S.C. § 1125(c);

Orders temporarily restraining, preliminarily, and permanently enjoining Wish and its agents,

officers, employees, representatives, successors, and assigns from using the "DealDash" mark, Wish's counterfeit "Deal Dash" mark, or any other colorably similar mark in any way, including but not limited to use in commerce, in advertising, or as a search keyword on the Internet or in app stores; or from fulfilling customer orders from from apps that include the "DealDash" mark, Wish's counterfeit "Deal Dash" mark, or any other colorably similar mark.

## JURY DEMAND

DealDash requests a jury trial.

Date: April 18, 2018                           Respectfully submitted,

_/s/ Matthew S. Warren_
Matthew S. Warren
Patrick M. Shields
Erika H. Warren
WARREN LEX LLP
2261 Market Street, No. 606
San Francisco, California, 94114
18-2353@cases.warrenlex.com

*Attorneys for Plaintiffs DealDash Oyj and Deal Dash Inc.*