WARREN LEX LLP
Matthew S. Warren (State Bar No. 230565)
Patrick M. Shields  (State Bar No. 204739)
Erika H. Warren (State Bar No. 295570)
18-2353@cases.warrenlex.com
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile

Attorneys for Plaintiffs DealDash Oyj and DealDash Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEALDASH OYJ and DEALDASH INC.<br>　　　Plaintiffs,<br><br>v.<br><br>CONTEXTLOGIC INC. d/b/a WISH<br>　　　Defendant.<br>_____ | Case No. 3:18-cv-02353-MMC<br><br>**DEALDASH'S OPPOSITION TO DEFENDANT'S ADMINISTRATIVE MOTION TO CONTINUE HEARING FOR PLAINTIFFS' PRELIMINARY INJUNCTION MOTION AND EXTEND ASSOCIATED DEADLINES**<br><br>Senior District Judge:  Hon.  Maxine M. Chesney<br><br><u>Hearing on Motion for Preliminary Injunction</u><br>Date:　　　Friday, June 29, 2018<br>Time:　　　9:00 a.m. PDT<br>Location:　　Courtroom 7, 19th Floor |

The fundamental premise of Defendant's administrative motion is false: DealDash's pending Motion for Preliminary Injunction is *not* moot because Wish has *not* stopped using its counterfeit "Deal Dash" mark. Although Wish repeatedly states that it has "voluntarily and permanently ceased use" of the mark (Docket No. 26 at 2:6), when DealDash pressed Wish to confirm it had stopped all use of the mark, *Wish refused*. In fact, Wish is still using its knockoff "Deal Dash" mark to this day. Wish's website promoting its iOS Mobile App prominently displays the "Deal Dash" mark, and a search in the Apple App Store for the registered trademark "DealDash" returns Defendant's Wish app. As long as Wish continues to damage DealDash's business and goodwill by infringing DealDash's registered service mark, injunctive relief remains an urgent need.

In contrast, Wish has shown no good cause for a further continuance of the preliminary injunction schedule. DealDash has already granted Wish a three-week extension to accommodate its counsel. The current schedule thus gives Wish over five weeks total for its opposition. Wish's administrative motion fails to explain why Wish's two large law firms of record cannot complete the opposition in that time.

**I.    DEALDASH ALREADY GRANTED A THREE-WEEK EXTENSION TO ACCOMMODATE THE PERSONAL SCHEDULE OF WISH'S COUNSEL**

Wish's administrative motion states that the current schedule is "agreed to by stipulation," Docket No. 26 at 2:8, but entirely omits the context and purpose of Wish's original extension request and DealDash's agreement. In fact, Wish's counsel Bradley Love requested an extension of more than three weeks for the opposition, and a four-week continuance of the hearing, to accommodate his personal travel schedule. Declaration of Erika Warren ("Warren Decl.") ¶¶ 4, 5. Mr. Love explained that the extension was essential because of his existing travel plans, because he was Wish's only California counsel, and because he would personally argue the preliminary injunction motion. *Id.* ¶ 6. Although DealDash believed its Motion should be briefed and heard promptly, out of professional courtesy to Mr. Love, DealDash agreed to extend the briefing schedule as Wish requested. *Id.*; Docket No. 20.

Just eleven days after the parties reached this stipulation, Wish's other counsel, John Crittenden, appeared in the case and asked for another extension to accommodate *his* personal schedule. Warren Decl. ¶ 7. At that time, Wish still had two weeks to file its opposition on the current schedule. *Id.* ¶ 8. Mr. Crittenden suggested a further extension was justified because "Wish has ceased using the DEAL

DASH designation," making the Motion, in his view, "moot." *Id.* & Ex. 2. On May 16, DealDash counsel sent Mr. Crittenden a letter explaining the Motion was not "moot," for three reasons: (1) Wish was still using the counterfeit "Deal Dash" mark; (2) in the absence of an injunction, there was nothing to prevent Wish from resuming any previously discontinued use of the mark; and (3) the Motion seeks broader relief than just stopping use of the mark. *Id.* ¶ 7 & Ex. 1.

In response, Mr. Crittenden proposed a stipulated injunction that Wish would be "enjoined from using the name DEAL DASH or other similar designation." Warren Decl. ¶ 10 & Ex. 4. While this appeared to represent a potentially meaningful concession, that appearance was illusory. When DealDash sought to clarify that Wish's proposal meant it would cease *all* use of the "Deal Dash" mark, Wish refused. *Id.* ¶¶ 11-14 & Exs. 5-8. Wish refused to accept any modifications to the language of its proposed take-it-or-leave-it stipulation; it would not even agree that Wish would not cite a stipulated further delay as a reason to deny the preliminary injunction. *Id.* ¶ 14 & Ex. 8. Wish also refused to answer direct questions about whether it, in fact, intended to keep using the mark, but expressed a belief that it was entitled to do so. *Id.* ¶¶ 15, 16 & Ex. 9, 10.

In light of Wish's refusal to stop all use of its counterfeit mark, and Wish's inadequate showing of need for a further continuance, DealDash explained that, having already once delayed its motion to accommodate the personal schedule of one Wish attorney, it could not agree to do so again for a different Wish attorney.

## II. BECAUSE WISH HAS NOT CEASED USING DEALDASH'S MARK, DELAY IN BRIEFING AND HEARING ITS MOTION WOULD PREJUDICE DEALDASH

Wish asserts that delaying its brief and the hearing would not prejudice DealDash because Wish has already "dropped the DEAL DASH name," and because Wish offered a consent injunction that would adequately protect DealDash. Neither assertion is correct. Although Wish has apparently removed *some* uses of the counterfeit "Deal Dash" mark, it has not stopped *all* use. In fact, Wish continues to use the name "Deal Dash" in its marketing communications, including its web page promoting its iOS App:[1]

---

[1] By taking at least some remedial measures, Wish appears to concede that its use of the counterfeit "Deal Dash" mark is infringing.

Warren Decl. ¶ 18 & Ex. 12.  Wish's digital advertisements have urged consumers to visit its counterfeit "Deal Dash" as recently as May 9, 2018.  *Id.* & Ex. 13.  And, although Wish argues the "Deal Dash" name is "not important" (Docket No. 26-1 ¶ 5),  it *would not agree to cease using the name, full stop*.  In particular, Wish refused to stop using "DealDash" or "Deal Dash" as a search keyword or meta-tag to draw customers to its app, thus leveraging its prior infringement of the DealDash mark.  *Id.* ¶ 14 & Ex. 8.  Wish also refused to update or disable apps already distributed to customers bearing the infringing "Deal Dash" game, meaning that the infringing app will continue to deceive (and Wish will continue to benefit from) millions of customers who have already downloaded the infringing app.  *Id*.  Wish could have easily rectified this by simply requiring an app update, a practice commonly used when pushing out important updates to applications.

As detailed in its Motion, DealDash continues to incur harm with each passing day, at least because customers who have been misled by Wish's unlawful conduct to Wish's own platform continue to associate their often negative experiences with the DealDash brand.  Docket No. 9 at 18–19, 21–22.  As long as Wish's infringement continues, urgent injunctive relief is needed.[2]

---

[2] Wish has repeatedly asserted that its limited remedial actions render the Motion for Preliminary Injunction "moot."  *E.g.*, Docket No. 26 at 3:13.  As explained above, the Motion is not moot because Wish will not agree to stop all use of the mark.  But if the Motion *were* moot, there would also be no need for an extension of time to respond to it.  If there were really nothing still in dispute, drafting the opposition would be a simple matter.

### III. WISH HAS FAILED TO SHOW GOOD CAUSE FOR A FURTHER EXTENSION OF TIME

Wish's administrative motion does not contend that it cannot oppose the Motion by the current deadline of May 29. On the date Wish asked for a second extension (May 15), there were still two weeks remaining until its opposition was due. Two weeks is the normal period for responding to a motion. Civil L.R. 7-3. In this case, of course, Wish had an additional three weeks on top of that, based on the previous stipulated extension.

The current schedule was set based on the schedule of Wish's other counsel, Mr. Love. Wish's administrative motion does not explain, or even address, why Mr. Love and his firm (who are still counsel of record) cannot prepare the opposition on the schedule they originally requested.[3] Wish does not explain what work Mr. Love's firm did in the three weeks before Mr. Crittenden joined the case, or why Mr. Crittenden cannot make use of that work product. Courts have repeatedly held that convenience of new counsel cannot serve as good cause for delay—and sensibly so, since litigants could otherwise engineer their own extensions simply by hiring additional lawyers. *BlackBerry Ltd. v. Typo Prod. LLC*, No. 14-23, Docket No. 97, slip op. at 2 (N.D. Cal. Sept. 18, 2014) (finding that "mere substitution of counsel is not good grounds" to delay discovery deadlines when a party "seeks time for its new counsel to get up to speed"; *Monroe v. Zimmer US, Inc.*, No. 8-2944, Docket No. 71, 2010 WL 3245165, at *2 (E.D. Cal. Aug. 17, 2010) (finding "[n]o good cause exists to permit an extension of the deadline" where motion rested "on the ground that the retention of new counsel justifies the extension").

Nor does Wish explain why, even without the Barnes & Thornburg attorneys, Mr. Crittenden and his team could not complete Wish's opposition by May 29. Wish's administrative motion asserts that, without its requested delay, "counsel cannot adequately review and address all issues raised by Plaintiffs' Motion—but, tellingly, Mr. Crittenden's declaration nowhere contains this language. *Compare* Docket

---

[3] Wish attempts to diminish Mr. Love by calling him Wish's "Indiana-based" and "out-of-state" counsel, as if his location precluded him from preparing Wish's opposition. Docket No. 26 at 3–4. Not so: Mr. Love is a member of the Bar of this Court and counsel of record in this action, and Mr. Love and his firm, Barnes & Thornburg, routinely practice in this District. *E.g., In re Resistors Antitrust Litigation*, No. 15-3820; *B & R Supermarket, Inc., et al v. Visa, Inc. et al.*, No. 16-1150; *International Test Solutions, Inc. v. MIPOX International Corporation et al.*, No. 16-791; *Deep Green Wireless LLC v. Ooma, Inc.*, No. 17-2434.

No. 26 at 4:10–13 *with* Docket No. 26-1 ¶ 11.  The only justification offered in Mr. Crittenden's declaration is that he is spending five days at an industry conference.  Docket No. 26-1 ¶ 7.  That alone does not justify an additional fourteen day extension on an opposition Wish already had five weeks to complete.  Nor does it justify delaying the hearing on DealDash's motion until July 20, a date seven weeks after the originally noticed hearing date.

**CONCLUSION**

For all the foregoing reasons, the Court should deny Wish's administrative motion seeking an additional two weeks to respond to DealDash's pending Motion for a Preliminary Injunction.

Date:  May 21, 2018                                     Respectfully submitted,

                                                          Erika H. Warren
                                                          Patrick M. Shields
                                                          Matthew S. Warren
                                                          WARREN LEX LLP
                                                          2261 Market Street, No. 606
                                                          San Francisco, California, 94114
                                                          18-2353@cases.warrenlex.com

                                                          *Attorneys for Plaintiffs DealDash Oyj and Deal Dash Inc.*